# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RAYANNE REGMUND, et al. | § | CIVIL ACTION |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | NO. 4:16-cv-02960 |
| | § | |
| TALISMAN ENERGY USA, INC. | § | |
| | § | |
| Defendant | § | JUDGE KEITH P. ELLISON |

## PLAINTIFFS' SUR-REPLY TO DEFENDANT'S POST-HEARING BRIEF IN OPPOSITION TO CLASS CERTIFICATION AND OBJECTION TO ITS NEW EVIDENTIARY SUBMISSIONS

At the conclusion of the March 2019 hearing, the Court sought to confirm that Talisman would not seek to recoup alleged overpayments from royalty owners. In response, Talisman has advised the Court that it will seek to claw-back overpayments made voluntarily by Talisman, sent a post-brief letter of "clarification" claiming it asserted a counterclaim against absent class members despite being only mentioned in its pleading in purported "Reservation of Rights" section and dedicated over half of its post-hearing brief to an intra-class conflict argument not previously briefed to this Court and which, if it event exists, would be one that is wholly Talisman created by its post-litigation "true-up." Talisman seeks to support this last minute "Hail-Mary" by submitting new legal arguments, case law and evidence including evidence it objected too during the hearing. The combination of new claims, arguments, case law and evidence require this response.

## INTRA-CLASS CONFLICT

In its Post-Hearing Brief ("Opposition Brief"), Talisman contends for the first time that this Court must deny class certification "because, boiled down to their essence, Plaintiffs' claims

1

seek to rob Peter to pay Paul, taking from the 'overpaid' royalty owners and giving that sum to the 'underpaid' royalty owners." (Doc. 162 at pg. 5.) Talisman cites the Court to *Langbecker* v. *Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) – a case that ultimately was ***granted settlement class certification***[1] despite the "substantial conflicts . . . among the class members" that Talisman insists "doomed" the case. Doc. 162 at pg. 5, 6.) Talisman also relies on a line of cases where courts outside the Fifth Circuit denied class certification because the relief sought by the representative plaintiff(s) would necessarily harm other class members rather than defending their interests.[2] *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (denying class certification where the same act that harmed some cattle producers benefited other cattle producers); *Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988) (denying class certification of all landowners in the vicinity of an airport because some of those landowners benefitted); *Auto Ventures, Inc. v. Moran*, 1997 WL 306895 (S.D.Fla.1997) (denying class certification because the proposed class "collapses into...distinct groups of winners and losers"). Each of these cases involve an "actual" conflict, ripe for review, as opposed to here where factual and legal disputes will ultimately determine whether an intra-class conflict even exists. Ultimately, Talisman relies upon these misplaced authorities and mischaracterizations of Plaintiffs' claims, to set-up a "strawman" argument over a potential conflict that may arise between class members in the future so it can knock it down today.

Talisman's "strawman" is nothing more than a house of cards built upon a disputed "true-up" and Talisman's yet unasserted counterclaim for recoupment of overpayments against unnamed

---

[1] *See In re Electronic Data Systems Corp. "ERISA" Litigation*, 6:03-cv-00126-LED at Document No. 334 (August 6, 2018 Order and Final Judgment Approving Proposed Settlement); *see also Feder v. Elec. Sys. Corp.*, 248 F. App'x 579 (5th Cir. 2007) (where plaintiff lacked standing to challenge class settlement).
[2] See Exhibit A (Doc. 57-5 at 38-59) As evidenced by the attached royalty statements, Talisman has an extensive history of taking back from prior payment periods – June 2016 royalty statement evidencing 11 negative adjustments going back almost four years –to July 2012.

2

class members. The Fifth Circuit has made it clear that the *mere prospect* of a future counterclaim shall not be a basis for denying class certification. *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1116 (5th Cir. 1978), *aff'd sub nom. Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980)). Aware of this obvious flaw in its "strawman" argument, Talisman filed a letter of "Clarification" mischaracterizing[3] its own pleading to now claim it "plainly pleaded" a recoupment/overpayment counterclaim against unnamed class members as opposed to *reserving the right to do so* after a class is certified. (Doc. 164.)

However, Talisman's counterclaims are expressly limited to "Plaintiffs and Defendants-in-Counterclaim Rayanne Regmund, Gloria Janssen, Michael Newberry and Carol Newberry." (Doc. 79 at pg. 12, par. 1). Any plain reading of Talisman's Answer and Counterclaims establishes that it *did not plead* a recoupment/overpayment counterclaim against unnamed class members, but instead merely *reserved the right to do so* after a class is certified:

### RESERVATION OF RIGHTS TO ASSERT COUNTERCLAIMS AGAINST CLASS MEMBERS

> The foregoing counterclaims asserted against Defendants-in-Counterclaim apply similarly to putative class members. In the event that class certification is granted in this matter, Talisman *reserves the right* to file and assert the foregoing Counterclaims against each and every class member against whom they apply and who may be properly joined in this action. (Doc. 79 at pg. 14) (emphasis added).

Simply put, there would be no reason for Talisman to *"reserve[] the right to file and assert the foregoing Counterclaims against each and every class member,"* if the first sentence had "plainly pleaded" those counterclaims as Talisman now tries to claim in its letter. *Id.*[4]

---

[3] Talisman's brief contains numerous mischaracterizations of the record in this case. *See* Exhibit B

[4] Talisman asserted recoupment as an affirmative defense against unnamed class members in its Amended Answer. (Doc. 79, p. 10 – 4th Defense) However, an affirmative defense does not risk a judgment against unnamed class members for royalty overpayments. *Seidner v. Citibank (S. Dakota) N.A.*, 201 S.W.3d 332, 337 (Tex. App. 2006) (emphasis added) (such an affirmative defense is treated as a set-off against an amount Talisman owes to absent class members related to the same transaction).

# INJURY IN FACT

Moreover and contrary to Talisman's assertions, Plaintiffs are not seeking to "shuffle money from one set of class members to another," (Doc. 162 at pg. 5), but rather seek class certification of a **homogeneous** group of royalty owners who have all suffered the same contractual breach and harm – *i.e.*, the breach of their lease agreements requiring payment on the volume of production sold from each well by Talisman's improper calculation (relying on volumetric allocations and shrunk volumes that did not reflect the volume of production actually sold from each well) and payment of oil and gas royalties owed. *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014)(The legal requirement that class members have all suffered the same injury can be satisfied by an instance of the defendant's injurious conduct…).

**1. Declaratory Judgment**

Significantly, all royalty owners (whether overpaid or underpaid) are entitled to a declaratory judgment on a class-wide basis, which would declare how Talisman is to calculate royalty payments under the common terms of the lease agreements and further order Talisman to provide complete and accurate information pursuant to Tex. Nat. Res. Code § 91.502. *See* Plaintiffs' First Amended Complaint, Count 4 (Doc. 61 at pg. 20-21). Such relief may be sought regardless of "whether or not monetary relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003(a); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a),(b) (stating any person under a contract may have the court "determine[] any question of construction . . . arising under the[ir] . . . contract[s] . . . and obtain a declaration of rights, status, or other legal relations thereunder . . . before or after there has been a breach"); *accord MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 667 (Tex. 2009) (declaratory relief is available for "a matured breach" of contract claim).

## 2. Injunctive Relief

Plaintiffs are entitled to be paid on "the proceeds derived from the sale of oil and gas *from an oil or gas well*." § Tex. Nat. Res. Code 91.402 (emphasis added). In addition to monetary relief, the proposed Class seeks a mandatory injunction against Talisman to disclose certain by well production, sales and payment information pursuant to Texas law, including the price paid for production sold and any deductions that reduced said payment. *See* Plaintiff's First Amended Complaint, Count 2 (Doc. 61 at pg. 19-20), Plaintiffs' Brief in Support of Class Certification (Doc. 51 at pg. 4), Plaintiffs' Response to Talisman's Supplemental Brief in Opposition to Class Certification (Doc. 85-1 at pg. 3); *see also* Tex. Nat. Res. Code § 91.141(b) (permitting book inspection by any royalty owner), Tex. Nat. Res. Code § 91.502, § 91.504 and § 91.505 (concerning a royalty interest owner's request for information or answers to questions concerning a payment made pursuant to this subchapter). It is certainly clear that Talisman's conduct has raised numerous questions concerning its calculation and payment of royalties to Class Members.

## CLASS CERTIFICATION

Given that Plaintiffs and the proposed Class are all part of a homogenous group of royalty owners that have suffered the same breach of contract and have the same right to pursue declaratory relief and injunctive relief, class certification is proper under Rule 23 whether as a Rule 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4) class." *See* Plaintiffs' First Amended Complaint at pg. 14, par. 45 (Doc. 61); *see also* Plaintiffs' Response to Talisman's Supplemental Brief in Opposition to Motion for Class Certification at pg. 2 (Docs. 85-1 and 87). As shown in Plaintiffs' Post-Hearing Response, class certification under Rule 23(b)(3) is appropriate at this stage of the proceeding.

Doc. 163). However, certification of a class alternatively under Rule 23 (b)(1), (b)(2), (b)(3) and (c)(4) is within the Court's broad discretion:[5]

- **Rule 23(b)(1)(A)**, because prosecuting separate actions would create the risk of establishing "inconsistent or varying adjudications" as to the industry standard method in which Talisman is to allocate net sales from commingled production and the resulting damages to its royalty owners thereby "establish[ing] incompatible standards of conduct for" Talisman;

- **Rule 23(b)(1)(B)**, because "as a practical matter" adjudicating an individual class member's right to damages vis-à-vis a specific action against Talisman pursuant to an alternative allocation method could potentially expose other royalty owners to a "claw back" for any royalty overpayments, thereby "substantially impair[ing] or imped[ing]" those individuals' "ability to protect their interests";

- **Rule 23(b)(2)**, because Talisman "has acted or refused to act on grounds generally applicable to the class" by improperly calculating and paying oil and gas royalties in breach of the proposed Class's lease agreements, and declaratory or mandatory injunctive relief as to the information and accounting issue "is appropriate respecting the class as a whole"; **or**

- **Rule 23(c)(4)**, because questions of law or fact common to the proposed Class predominate over any questions affecting only individual members, and the Court can deem it appropriate to maintain an action for declaratory judgment or mandatory injunction against Talisman as a class action with respect to either of these particular issues. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) (noting Rule 23(c)(4) class must also satisfy Rule 23(b)(3) predominance requirement). *See* Fed. Rule Civ. Proc. 23(b)(1),(2) and (c)(4).

In any event, it is entirely premature to conclude that there exists an intra-class conflict for the proposed Class because the conclusion presupposes that other disputed issues will be resolved in Talisman's favor (*e.g.*, what allocation method Talisman is to use and whether that method

---

[5] *See, e.g.: Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) (certifying Rule 23(b)(2) injunctive class and Rule 23(b)(3) monetary relief class); *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 612 (E.D.N.Y. 1991) (certifying Rule 23(b)(1) and (b)(3) class); *Mertz v. Harris*, 497 F. Supp. 1134, 1139 (S.D. Tex. 1980) (certifying Rule 23(b)(1)(A) and (b)(2) class); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 239 (S.D.N.Y. 2010) (certifying "(b)(3)/(c)(4) class").

results in overpayments, whether Talisman *fully* "trued up" shrunken payments after the fact such that they do not owe more royalty payments to the class in the aggregate, etc.). Ultimately, the Court may find that Talisman is systemically barred from asserting an overpayment counterclaim against class members but if not, this Court has continuing authority under Rule 23 to fashion an order or adopt standards that avoid the risk of prejudicing certain unnamed class members, including the authority to modify or decertify the class, or create a Rule 23(b)(3) subclasses of those royalty owners who were underpaid royalties by Talisman during the class period.[6]

Additionally, as discussed above, there is no existing intra-class conflict because Talisman has not asserted a counterclaim against the proposed class members, but instead purportedly "reserved" the right to do so in the future, which is of no force and effect. *See, e.g., Mulvey Const., Inc. v. Bituminous Cas. Corp.*, 2011 WL 1231603, at *2 (S.D. W.Va. Mar. 30, 2011) (quoting *Messick v. Patrol Helicopters, Inc.*, 2007 WL 2484957, *1 (D. Mont. Aug. 29, 2007)) ("At the outset, the court notes that a 'reservation of affirmative defenses is of no force and effect.'"). In fact, there likely never will be such a conflict because Talisman has not timely raised a counterclaim for overpayments against any unnamed class member (which it was already supposed to have done),[7] and the voluntary payment rule, statute of limitations, laches, etc., may ***systemically*** preclude Talisman from any attempt to assert such a counterclaim in the future, all of which the Court can resolve well in advance of any trial via summary judgment in favor of the class.

---

[6] *See* Supra at 2-3.

[7] *See Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 75 F.R.D. 40, 44 (S.D.N.Y. 1977); *see also Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 552, 555 (D. Del. 1979) (similar); *In re Fin. Partners Class Action Litig.*, 597 F. Supp. 686, 688–89 (N.D. Ill. 1984) (similar); *Davis v. S. Bell Tel. & Tel. Co.*, No. 89–2839–civ, 1994 WL 912242 (S.D. Fla. Feb. 1, 1994) (similar).

Obviously, if it is found that Talisman is systemically precluded from asserting the counterclaim, then there can be no potential conflict existing within the proposed Class. *See, e.g., Ochoa v. McDonald's Corp.*, 2016 WL 3648550 (N.D. Cal. July 7, 2016) (holding that despite defendant-employer's contention that "there were winners and losers" from the manner it tracked employee hours, no conflict existed because defendant-employer had no right of recoupment). Regardless of how this Court treats Talisman's potential counterclaims, there will be no due process concern of "forc[ing] royalty owners into making a blind choice" about becoming a class member, (Doc. 162 at pg. 8), because: (1) class notice will properly alert all individuals of Talisman's potential counterclaim,[8] and (2) the Court has continuing authority under Rule 23 to fashion an order or adopt standards that avoid the risk of prejudicing certain unnamed class members, including the authority to modify or decertify the class, or create subclasses prior to any final judgment. *See Roper*, 578 F.2d at 1116.

## PLAINTIFFS OBJECT AND MOVE TO STRIKE

In a further effort to shore up its crumbling objections to class certification, Talisman seeks to "impeach" the testimony of Peter Huddleston by reference to and admission of new evidence (twelve leases - 343 pages) and to fill gaps in its intra-class conflict argument with a "Supplemental" Declaration" of employee Corinne Bugamelli. Opposition Exhibits 1-13. This despite Talisman's vigorous objection to the introduction of Professor Sager's Declaration and the 368 randomly selected leases reviewed by Huddleston. Doc. 155 at 82:12-25 and 84:7-16. At the

---

[8] *See Abulaban v. R. W. Pressprich & Co.*, 51 F.R.D. 496, 497 (S.D.N.Y. 1971) ("An evenhanded, objective description of the claims [and counterclaims] is called for to satisfy the requirement of adequate notice. When that is achieved, then the notice need only refer to the exclusionary request required by Rule 23(c)."); *see also Donson Stores, Inc. v. Am. Bakeries Co.*, 58 F.R.D. 485, 490 (S.D.N.Y. 1973) ("Nothing in this opinion should be construed as suggesting that reference to the counterclaims in the class action notice should be eliminated. The notice should contain appropriate mention of the entire scope of the case."); *cf. Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 552 (D. Del. 1979) (holding no notice to class members of defendants' counterclaim had to be given "since no affirmative recovery is possible" for that counterclaim).

8

hearing, counsel for Talisman repeatedly objected to the failure to "disclose" the "lease" evidence presumably on the basis that counsel was entitled to see the evidence prior to the hearing and Talisman would be prejudiced by its introduction. *Id.* Apparently, Talisman has no problem with relying upon "cherry picked" leases and undisclosed statements in support of its opposition to class certification. Plaintiffs object to Exhibits 1-13 and move to strike and all arguments related thereto.

### 1. The Declaration

The "Supplemental" Declaration of Corrinne Bugamelli represents uncorroborated evidence intended to shore up Talisman's "true-up" and the disputed conclusion that:

> *Far from being an outlier or bad actor, the evidence shows that Talisman followed industry practice, paid royalties on the full amount of volume, and went to great lengths to true-up any interim underpayments. See Ex. 1, Suppl. Decl. of Corrine Bugamelli "Talisman has paid out all the royalties owed".* Opposition at p4 and 23.

The disputed nature of the alleged "true-up" has already been well documented. Doc. 163 at 14-15. During the hearing, Talisman's expert dealt the "size of the pie" a crippling blow by admitting that a Revenue Audit was the only way to know if all unpaid amounts had actually been paid out to royalty owners - of which there is no evidence. Doc. 158 at 86:7-11. With their intra-conflict argument (by post litigation "true-up") hanging by a thread, Talisman had their employee execute a new declaration the very next day (March 30, 2019). But, Ms. Bugamelli has already confirmed that she did not participate in the calculation and payment of the alleged February 2017 payment nor have personal knowledge of the scope and method of such a payment. Doc. 163 at 14.

Even more disturbing are Talisman's effort to impeach the testimony of Peter Huddleston with misleading references to leases Talisman objected to having introduced in support of Huddleston's opinions in the first place. Doc. 155 at 82:12-25 and 84:7-16; Exhibits 2-13. Talisman suggests that Huddleston failed to fully review the leases by mischaracterizing cherry-

9

picked lease provisions. Opposition at p14-18. Talisman attempted the same tactic without success with the Janssen lease and "allocation." 155 at 154:15-155:14. (Huddleston – "...I was asked whether the term "allocation" appeared...I did not see an allocation methodology.) Rather than confront Huddleston directly with "material" differences in Class Members' leases, Talisman chose to take "pot shots" at Huddleston with references to gas processing "shrinkage" - not condensate as Huddleston testified and a single lease that requires a specific "allocation" method - one consistent with Plaintiffs' position in this case - compositional allocation. Opposition Exhibit 12 - LBW Minerals Lease at 9-14. (*Allocation methodologies used by Lessee shall be in compliance with recommended industry practices...Id.* at 9) *See Seeligson* at *9-11.

## **CONCLUSION**

For the reasons set forth herein and throughout Plaintiffs' Post-Hearing Response and this sur-reply, this Court should certify the proposed Class under Rule 23 (b)(1), (b)(2), (b)(3) and/or (c)(4) and provide all individuals of the proposed Class with notice of the claims, defenses, and potential counterclaims that may arise in this matter. Should Talisman assert its overpayment counterclaim and the Court determines it cannot resolve that issue in favor of the class on summary judgment and that an intra-class conflict exists, then this Court, as the Fifth Circuit instructed in *Roper*, may use its continuing authority under Rule 23 to modify or decertify the class, or create subclasses, so as to resolve that conflict prior to any final judgment against the class at trial.

Respectfully submitted,

By: /s/ Bryan O. Blevins, Jr.
Bryan O. Blevins, Jr.
**PROVOST★UMPHREY LAW FIRM, L.L.P.**
SBOT Bar No. 02487300
SDOT Bar No. 347439
490 Park Street
Beaumont, Texas 77701
409) 835-6000
(409) 838-8888
Email: bblevins@provostumphrey.com

W. Michael Hamilton (TN 10720)
**PROVOST★UMPHREY LAW FIRM, L.L.P.**
Hobbs Building, Suite 303
4205 Hillsboro Road
Nashville, TN 37215
Phone: (615) 297-1932
Fax: (615) 297-1986
Email: mhamilton@provostumphrey.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by hand, this 8th day of May 2019.

/s/ Bryan O. Blevins, Jr.
Bryan O. Blevins, Jr.