UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAYANNE REGMUND, et al., | § | CIVIL ACTION |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | NO. 4:16-cv-02960 |
| | § | |
| TALISMAN ENERGY USA, INC., | § | |
| | § | |
| Defendant. | § | JUDGE KEITH P. ELLISON |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND CASE CONTRIBUTION AWARDS

Bryan O. Blevins, Jr.
State Bar No. 02487300
Southern District of Texas ID:  347439
**PROVOST★UMPHREY**
  **LAW FIRM, L.L.P.**
490 Park Street
Beaumont, Texas 77701
Telephone: (409) 838-8858
Facsimile: (409) 813-8610
Email:  bblevins@provostumphrey.com

Joseph N. Kravec, Jr. (PA 68992)
Wyatt A. Lison (PA 90030)
**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
Email:  jkravec@fdpklaw.com
        wlison@fdpklaw.com

W. Michael Hamilton (TN 10720)
**PROVOST★UMPHREY**
  **LAW FIRM, L.L.P.**
Hobbs Building, Suite 303
4205 Hillsboro Road
Nashville, TN 37215
Telephone: (615) 297-1932
Facsimile: (615) 297-1986
Email:  mhamilton@provostumphrey.com

*ATTORNEYS FOR PLAINTIFFS AND THE*
*PROPOSED SETTLEMENT CLASS*

## TABLE OF CONTENTS

I.   NATURE OF THE CASE AND STAGE OF PROCEEDINGS ...................................................2

II.  STATEMENT OF LEGAL ISSUES AND STANDARD OF REVIEW ..................................2

    A.  Attorneys' Fees and Expenses in Common Fund Class Action Settlements.......................2

    B.  Case Contribution Awards ...................................................................................................5

III. SUMMARY OF ARGUMENT .............................................................................................6

IV.  ARGUMENT ........................................................................................................................7

    A.  The Requested Attorneys' Fee is Reasonable.....................................................................7

        1.  The fee is less than 25% of the $36,707,008 value of the Settlement ............................7

        2.  The *Johnson* analysis supports the reasonableness of the fee request ........................10

            a.  The time and labor required ...............................................................................11

            b.  The novelty and difficulty of the issues.............................................................11

            c.  The skill required to perform the legal service adequately..................................13

            d.  The preclusion of other employment by the attorneys.........................................14

            e.  The customary fee for similar work in the community.........................................14

            f.  Whether the fee is fixed or contingent ................................................................15

            g.  Time limitations imposed by the client or the circumstances...............................16

            h.  The amount involved and the results obtained .....................................................16

            i.  The experience, reputation, and ability of the attorneys......................................17

            j.  The undesirability of the case ..............................................................................18

            k.  The nature and length of the relationship with the client....................................18

            l.  Awards in similar cases .......................................................................................18

        3.  A simplified lodestar cross-check supports the fee request .........................................19

    B.  The Requested Litigation Expense Award is Reasonable .................................................22

i

C.  The Requested Case Contribution Awards are Reasonable.............................................23

V.  CONCLUSION.................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Adhikari v. Daoud & Partners,*
  No. 4:09-CV-1237, 2017 WL 5904782 (S.D. Tex. Nov. 30, 2017) ......................................... 21

*Billitteri v. Sec. Am., Inc.,*
  2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ......................................................................... 22

*Bottoni v. Sallie Mae, Inc.,*
  No. C 10-03602 LB, 2013 WL 12312794 (N.D. Cal. Nov. 21, 2013)....................................... 9

*Burford v. Cargill, Inc.,*
  No. CIV.A. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) .................................... 14, 18

*Cole v. Collier,*
  No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) .............................. 14, 15, 21

*DeHoyos v. Allstate Corp.,*
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................................ 18

*Di Giacomo v. Plains All Am. Pipeline,*
  No. CIV.A.H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001).................. 5, 16, 19, 22

*Dyson v. Stuart Petroleum Testers, Inc.,*
  No. 1-15-CV-282 RP, 2016 WL 815355 (W.D. Tex. Feb. 29, 2016)............................ 4, 10, 16

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  No. 3:02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)............................. *passim*

*Farrar v. Hobby,*
  506 U.S. 103 (1992) ............................................................................................................. 16

*Fleisher v. Phoenix Life Ins. Co.,*
  No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ..................................... 9

*Humphrey v. United Way of Texas Gulf Coast,*
  802 F. Supp. 2d 847 (S.D. Tex. 2011) ............................................................................. 6, 23

*In re Catfish Antitrust Litig.,*
   939 F. Supp. 493 (N.D. Miss. 1996) ...................................................................... 23

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
   424 F. Supp. 3d 456 (E.D. La. 2020) .................................................................... 22

*In re Enron Corp. Securities, Derivatives, and ERISA Litigation,*
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................... 5, 13, 16, 22

*In re Gulf Coast Oil Corp.,*
   404 B.R. 407 (Bankr. S.D. Tex. 2009) .................................................................. 12

*In re Heartland Payment Sys.,*
   851 F. Supp. 2d 1040, 1075 (S.D. Tex. 2012) .............................................. *passim*

*In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
   517 F.3d 220 (5th Cir. 2008) .................................................................................. 3

*In re Lease Oil Antitrust Litig.,*
   186 F.R.D. 403 (S.D. Tex. 1999) .......................................................... 5, 10, 17, 23

*In re Noble Corporation, PLC,*
   20-33826 (Bankr. S.D. Tex. 2009 Dec. 7, 2020) .................................................. 21

*In re Vioxx Prod. Liab. Litig.,*
   No. MDL 1657, 2018 WL 4613941 (E.D. La. Sept. 26, 2018) ........................... 4, 5

*Jenkins v. Trustmark Nat. Bank,*
   300 F.R.D. 291 (S.D. Miss. 2014) ..................................................................... 6, 19

*Johnson v. Ga. Highway Express, Inc.,*
   488 F.2d 714 (5th Cir.1974) ..................................................................... *passim*

*Klein v. O'Neal, Inc.,*
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................................... 4, 10

*Louisiana Power & Light Co. v. Kellstrom,*
   50 F.3d 319 (5th Cir. 1995) ................................................................................ 16, 19

*Migis v. Pearle Vision, Inc.*,
   135 F.3d 1041 (5th Cir.1998) ............................................................................ 16

*O'Donnell v. Harris Cty., Texas*,
   No. CV H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ......................... 18

*Seeligson v. Devon Energy Prod. Co., L.P.*,
   753 F. App'x 225 (5th Cir. 2018) ........................................................................ 13

*Shaw v. CAS, Inc.*,
   No. 5:17-CV-142, 2018 WL 3621050 (S.D. Tex. Jan. 31, 2018) ......................... 4, 10

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) .................................................................. 23

*Slipchenko v. Brunel Energy, Inc.*,
   No. CIV.A. H-11-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ..................... 21

*Strong v. BellSouth Telecomm. Inc.*,
   137 F.3d 844 (5th Cir. 1998) ............................................................................... 3

*Tollett v. City of Kemah*,
   285 F.3d 357 (5th Cir. 2002) ............................................................................. 20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ............................................................................ 3, 4

*Welsh v. Navy Fed. Credit Union*,
   No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ............. 4, 6, 10

**Other Authorities**

Federal Judicial Center, *Managing Class Action Litigation:*
   *A Pocket Guide for Judges*, 3d. Ed. (2010) ........................................................... 9
Linda S. Mullenix, *Getting to Shutts*, 46 U. Kan. L. Rev. 727 (1998) ........................ 12

**Rules**

Fed. R. Civ. P. 23(h) .......................................................................................... 2

The litigation efforts of Plaintiffs Rayanne Regmund Chesser and Gloria Janssen in this oil and gas class action case have resulted in a Settlement Agreement with Defendant Talisman Energy, USA, Inc. that—by virtue of Talisman's affirmative cash payment of over $24 million and its release of any right to recoup what Plaintiffs allege amount to over $12 million of royalty payments already paid—provides over $36 million in direct benefits to the participating royalty interest owners in the South Texas Eagle Ford shale play.[1]  Plaintiffs now seek attorneys' fees in the amount of $9 million, $871,138.16 in litigation expenses, and case contribution awards in the amount of $7,500 for each Plaintiff.   As discussed below, the requested attorneys' fee is fully merited because it amounts to less than 25% of the Settlement's total monetary value, well below the 30% "benchmark" for percentage fee awards approved in common fund class settlements such as this one.  Moreover, a review of the relevant factors from *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) and the *actual* attorneys' fees of over $4.2 million accrued by Class Counsel on 5,097.8 hours of their professional time over the past 6 years only bolsters the reasonableness of the request, as the Settlement provides an outstanding recovery to impacted Participating Class Members and the fee award results in a relatively modest 2.1 multiplier to Class Counsel.  The expenses incurred were also reasonable and necessary for the litigation of this matter and should be reimbursed from the common fund.  And the requested case contribution awards (or as they are commonly referred to in caselaw, "incentive awards" or "service awards") are well deserved in light of the significant time and effort put forth by Plaintiffs and the excellent results achieved by the Settlement.

---

[1]  Capitalized terms used herein have the meaning given to them in the Stipulation and Agreement of Settlement ("Settlement Agreement" or "S.A."), filed at Doc. 206, unless otherwise noted.  The proposed Plan of Allocation is Exhibit 1 to the Settlement Agreement (referenced herein as "S.A., Exhibit 1") at Doc. 206-1.

For the reasons that follow, Plaintiffs respectfully request that the Court approve their motion for attorneys' fees, litigation expenses, and case contribution awards.

## I.      NATURE OF THE CASE AND STAGE OF PROCEEDINGS

Plaintiffs sued Talisman, alleging that Talisman improperly calculated royalties owed to Plaintiffs and other similarly situated oil and gas leaseholders with leases in the Eagle Ford shale play.  Doc. 1, 61.  As this Court recognized, the gravamen of Plaintiffs' case is that Talisman breached the leases by "using volumetric allocation instead of a compositional allocation that accounts for actual well production, and estimating shrinkage factors."  Doc. 172 at 9.  Talisman denied that it breached any leases.  Further, in the event that it was determined that it had miscalculated royalty payments, Talisman asserted recoupment in the nature of off-set as an affirmative defense, asserted a counterclaim for recoupment, and proposed to assert against any certified class recoupment of any overpayments to royalty interest owners.  Doc. 79.

Following over four years of litigation and multiple mediations with Judge Royal Furgeson (retired) and subsequent, extensive negotiations under his guidance, Talisman and Plaintiffs reached a Settlement Agreement to resolve this case in its entirety on a class-wide basis.  On December 9, 2020, upon Plaintiffs' motion, this Court preliminarily approved the Settlement Agreement and scheduled a fairness hearing for May 12, 2021.  Doc. 221; Doc. 222.

## II.     STATEMENT OF LEGAL ISSUES AND STANDARD OF REVIEW

### A.      Attorneys' Fees and Expenses in Common Fund Class Action Settlements

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Therefore, the Court must determine whether attorneys' fees in the amount of $9 million and $871,138.16 in litigation expenses are reasonable in light of the Settlement, as part of its duty to review and

approve the Settlement Agreement under the Federal Rules of Civil Procedure. *See, e.g., In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227–28 (5th Cir. 2008); *Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642–43 (5th Cir. 2012). The Fifth Circuit held in *Dell* that "district courts [have] the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by" the 12 factors enumerated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Id.* at 644. The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Plaintiffs submit that the Court should use the percentage method here. When the percentage of the fund method is used, the Court must first determine "the actual value created for, and received by, the class"; once the "the actual monetary value conferred to the class members by the settlement" is calculated, the Court should set a "benchmark percentage to be applied to this

value." *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1073, 1075 (S.D. Tex. 2012) (citations omitted); *see also In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2018 WL 4613941, at *7 (E.D. La. Sept. 26, 2018) ("[T]he Fifth Circuit . . . recognizes that, in consumer common fund cases, generally attorneys' fees should be a percentage of the entire available settlement amount and not just of the amount paid to the plaintiffs"). In this Circuit, a fee of 30% of the settlement fund has been recognized by courts as a reasonable benchmark. *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) ("A review of fifth circuit precedent indicates a 30% benchmark fee is reasonable."); *see also, e.g., Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *5 (W.D. Tex. Feb. 29, 2016) (noting "Fifth Circuit precedent suggests a benchmark fee of 30% is. . .  appropriate" and that "attorney fees awarded under the percentage method are often between 25% and 30% of the fund"). Next, the Court should review the *Johnson* factors to determine if a deviation from the benchmark percentage is appropriate. *See Dell, Inc.*, 669 F.3d at 644; *Shaw*, 2018 WL 3621050, at *3; *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010) (the court should check the resulting fee against the *Johnson* factors "to test the reasonableness of the fee and make adjustments as warranted by the circumstances").

A Court using the percentage method need not undertake a separate lodestar analysis. *See Dell*, 669 F.3d at 644 ("[D]istrict courts [have] the flexibility to choose between the percentage and lodestar methods"); *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("Based on the Fifth Circuit's precedent, the Court believes that using the percentage method analyzed under the *Johnson* factors is sufficient for analyzing fees."). Nevertheless, district courts will often conduct a simplified lodestar "crosscheck" to confirm the reasonableness of a percentage fee. *See Welsh*, 2018 WL 7283639 at

4

*16 ("[T]o ensure fairness to the class and to the class attorneys, the Court will also perform a simplified lodestar analysis as a crosscheck"); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *9 (N.D. Tex. Apr. 25, 2018) ("[C]ourts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records"); *In re Vioxx*, 2018 WL 4613941, at *6 ("The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method"); *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *7 (S.D. Tex. Dec. 19, 2001) ("In using a lodestar approach as a cross-check when awarding a percentage of the fund, a court often uses a summary of the hours expended by counsel at various stages, with less detailed breakdown than a straightforward application of the lodestar method as the primary basis for determining the appropriate fee."). In such cases, district courts routinely approve fee percentages that result in counsel receiving a "multiplier" of between 1 and 4 times their lodestar, or sometimes even more. *See In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (approving 9.52% fee in settlement valued at $7.2 billion, and noting that in its lodestar cross check, "a multiplier of 5.2 is warranted"); *Di Giacomo*, 2001 WL 34633373, at *11 (approving 30% percentage fee as confirmed by lodestar crosscheck that resulted in a 5.3 multiplier and noting "courts typically apply multipliers ranging from one to four"); *see also e.g., In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 448 (S.D. Tex. 1999) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied").

### B.   Case Contribution Awards

"Federal courts have repeatedly approved incentive awards in class action lawsuits to compensate plaintiffs for the services that they provide in the suit and the burdens that they

shouldered during the litigation." *Welsh*, 2018 WL 7283639 at *15; *see also Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) ("Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives."). In determining whether an incentive award is appropriate, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011); *see also In re Heartland*, 851 F. Supp. 2d at 1089 ("In deciding whether an incentive award is warranted, courts look to: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation.") (citations omitted).

## III.   SUMMARY OF ARGUMENT

Plaintiffs' requested attorneys' fee and litigation expense awards are reasonable and should be approved. The requested fee of $9 million is eminently reasonable because it represents less than 25% of the $36,707,008 value of the benefits conferred by the Settlement Agreement (described more fully above), well below the percentage fee of 30% (or more) regularly awarded in common fund cases in this Circuit. In addition, a review of the *Johnson* factors further demonstrates the reasonableness of the fee request; Class Counsel undertook a complex case on a fully contingent basis, expended substantial resources with no guarantee of success, devoted 5,097.8 hours of professional time to the matter for nearly six years, and achieved a result which provides Participating Class Members with a gross $24,428,573 in cash from which 100% of their

6

alleged royalty underpayments will be recovered, and the freedom from future claims for recoupment or defensive offsets by Talisman of royalty payments already paid to them, a benefit with a value of $12,278,435. And while not required, a "crosscheck" with Class Counsel's actual lodestar of over $4 million in fees accrued by Class Counsel further confirms that the attorneys' fees sought are reasonable because they represent a 2.1 multiplier to the lodestar, well within the acceptable range. Plaintiff's litigation expenses are also well documented and were necessary in the litigation of this matter.

In addition, the case contribution awards sought are here are fully merited. Plaintiffs expended a great deal of time and effort to vindicate the rights of other royalty interest owners over the past six years and achieved a significant benefit for the Class. Moreover, they did so at a personal cost as the direct victims of an unethical and damaging solicitation scheme. The $7,500 awards are consistent with those awarded in comparable cases and should be approved.

## IV.   ARGUMENT

### A.   The Requested Attorneys' Fee is Reasonable

#### 1.   The fee is less than 25% of the $36,707,008 value of the Settlement

In using the percentage of the fund method, the Court must first determine "the actual monetary value conferred to the class members by the settlement" and then set a "benchmark percentage to be applied to this value." *See In re Heartland*, 851 F. Supp. 2d at 1075. Under the agreement, Defendants agreed to pay $27 million into an account that will provide for (i) cash payments to Settlement Class, (ii) the costs of settlement administration, notice of same, and distribution of settlement payments, (iii) Plaintiffs' attorneys' fees and costs, and (iv) case contribution awards for named Plaintiffs Regmund Chesser and Janssen. Doc. 206, S.A. at ¶¶ 1.27, 1.34, 2.1, 4.2, 9.1. The funds that would have otherwise gone to Class Members who opted out of

the Settlement or were excluded because they previously released or adjudicated the claims released in the Settlement Agreement ("Non-Participating Class Members") revert to Defendant. *Id.* at ¶ 1.37. The deadline for exclusion has passed, *id.* at ¶ 1.21, and the parties have agreed that an estimated[2] $2,571,427 in funds that would have otherwise gone to Non-Participating Class Members had they remained in the Settlement will be refunded to Defendant.   Importantly however, this refund will not impact the recovery of Participating Settlement Class Members, who will receive at least the same recovery regardless of the refund attributable to Non-Participating Class Members.   Participating Class Members shall receive, as a group, 100% of the amount of actual aggregate underpayments as determined by the Equation of State ("EOS") Model used as part of this Settlement and Plan of Allocation.   In the event that the Gross Settlement Fund, less the Non-Participation Refund, is insufficient to cover the full amount of such payments to Participating Class Members following the payment of attorneys' fees, litigation expenses, and case contribution awards ultimately approved by the Court, and the costs of settlement administration, notice of same, and distribution of settlement payments, Class Counsel have agreed that they will be responsible for the difference.

Thus, the Settlement now provides for an actual cash fund of $24,428,573, which is part of the overall settlement value. *See* Declaration of Bryan O. Blevins, Jr. ¶¶ 10, 14 and Declaration of Joseph N. Kravec, Jr. ¶¶ 8, 12, filed herewith as Exhibits A & B. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1073-75 (settlement value included direct money relief to class, attorneys' fees and costs, and notice and administration costs).

---

[2] The Non-Participation Refund is estimated because the actual amount can only be ascertained after the Court awards any attorneys' fees, expenses, and case contribution awards.  Doc. 206, S.A., Exhibit 1, Plan of Allocation ¶ 5.

In addition to that affirmative payment, the Settlement provides that Talisman waives and releases any right to recoup from Participating Class Members overpayments related to Class Claims, which, as allocated under the Equation of State ("EOS") Model provided for by the Settlement, results in a collective benefit of $12,278,435 in royalties that Participating Settlement Class Members have already received and will be entitled to *keep*. Doc. 206, S.A. at ¶¶ 1.10, 3.1; Doc. 206-1, S.A., Exhibit 1, Plan of Allocation at ¶ 3(b); *See* Blevins Declaration ¶¶ 12, 14; Kravec Declaration ¶¶ 10, 12. Talisman's release of its overpayment claims directly benefits Participating Settlement Class Members and fully resolves the intraclass conflict raised by Talisman in opposition to class certification. *See Fleisher v. Phoenix Life Ins. Co.,* No. 11-CV-8405 (CM), 2015 WL 10847814, at *15 (S.D.N.Y. Sept. 9, 2015) ("In calculating the overall settlement value for purposes of the percentage of the recovery approach, Courts include the value of both the monetary and non-monetary benefits conferred on the Class.");[3] *In re Heartland,* 851 F. Supp. 2d at 1073 n.26 & 1077 (in valuing a settlement, the court should consider "the actual benefits conferred on the class members"); *see also* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges,* 3d. Ed., 35 (2010), available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf (when the percentage method is used,

---

[3] In *Fleisher,* the court valued a class action settlement as providing $134 million in total relief, based on cash benefits of over $40 million and "non-monetary" relief valued at $93.5, including the defendant life insurance company's agreement to waive future contests to the validity of class members' life insurance policies for lack of insurable interest or misrepresentations in applications and to freeze cost of insurance rates. *Id.* at *10-12. *Fleisher* approved class counsel's request for "a $13.5 million fee," which it noted "represents less than 10% of the overall settlement value, including monetary and non-monetary benefits." *Id.* at *15. Similarly, in *Bottoni v. Sallie Mae, Inc.,* No. C 10-03602 LB, 2013 WL 12312794, at *7 (N.D. Cal. Nov. 21, 2013), the district court valued a settlement of a class action lawsuit on behalf of student loan borrowers challenging the imposition of collection costs at an estimated $76 million by virtue of its "reduction in class members' collection costs . . . primarily through debt relief" and approved the requested attorneys' fees, noting that "[t]he requested $1,200,000 in attorney's fees amounts to approximately 1.5% of the estimated $76 million reduction in Collection Cost Assessments."

the percentage is derived from "the actual value to the class of any settlement fund plus the actual value of any nonmonetary relief"). When these significant monetary benefits are added to the some $4 million in "true up" payments Talisman made to certain underpaid leaseholders in 2016 and 2017, *see* Doc. 173-6, Plaintiff's litigation efforts have resulted in a significant recovery above the $24,428,573 cash fund.[4]

Thus, between Talisman's affirmative cash payment of $24,428,573 and its release of any right to recoup $12,278,435 of so-called overpayments already given to Participating Class Members, the Settlement provides a total value to them of $36,707,008—and so the requested fee accounts for just under 25% of the Settlement. This is an eminently reasonable percentage; in fact, it is well *below* the accepted "benchmark" for common fund cases. *See Shaw*, 2018 WL 3621050, at *3 ("A review of fifth circuit precedent indicates a 30% benchmark fee is reasonable."); *Dyson*, 2016 WL 815355, at *5 (same).[5]

2.      The *Johnson* analysis supports the reasonableness of the fee request

An analysis of the *Johnson* factors is designed to allow the Court to determine whether a deviation from the benchmark percentage, either upward or downward, is appropriate. *Shaw*, 2018 WL 3621050, at *3; *Klein*, 705 F. Supp. 2d at 673. On balance, Plaintiffs submit that these factors

---

[4] Inasmuch as these payments to leaseholders could ultimately be considered "overpayments" if royalty payments were recalculated at trial, it bears mentioning that any recoupment of these "true up" payments by Talisman is likewise released against Participating Class Members.

[5] In fact, even under an extremely conservative valuation that accounts only for the actual cash paid by Talisman, the fee request amounts to less than 32%, which is still within the range of reasonableness. *See Welsh*, 2018 WL 7283639 at *16 ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end."); *see also Erica P. John Fund*, 2018 WL 1942227, at *9 (noting "numerous courts in this Circuit have awarded fees in the 30% to 36% range" and "[i]f the request is relatively close to the average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award"); *In re Lease Oil*, 186 F.R.D. at 447 ("[D]istrict courts have awarded fees ranging from 18% to 36% of the recovery.").

strongly confirm the reasonableness of the $9 million requested fee. In fact, Plaintiffs submit that in this case, the *Johnson* factor analysis would confirm the reasonableness of a higher percentage.

### a.      The time and labor required

The Settlement Agreement was reached after almost five years of hard-fought active litigation.[6] The parties engaged in substantial discovery, including the production and review of over 600,000 pages of documents, five corporate witness depositions from Talisman's management, field engineering, production accounting and marketing departments, third party discovery and the development of industry expert testimony. *See* Blevins Declaration ¶¶ 24 -75; Kravec Declaration ¶¶ 24-47.

Numerous motions, briefs and hearings were before the Court on various issues. In particular, the parties briefed and argued Plaintiffs' motion for class certification in three separate hearings, including a two-day hearing with testimony from opposing expert witnesses. After the Court denied certification of a litigation class premised, in part, on the possibility of Talisman's recoupment of overpayments, Doc. 172, Plaintiff Regmund Chesser moved for summary judgment on Talisman's recoupment counterclaim asserting that the voluntary payment doctrine barred any recoupment. Doc. 173. The Settlement Agreement was reached only while that summary judgment motion was pending, after a two-day mediation with Judge Furgeson, followed by his mediator's proposal that the parties accepted and months of subsequent negotiations under his guidance in which the parties worked out the basic terms of the deal and the final terms of the formal Settlement Agreement.

---

[6] As shown in the attached declarations from Plaintiff's counsel Bryan O. Blevins, Jr. and Joseph N. Kravec, Jr., the actual work began almost six years ago, in August 2016, when Plaintiffs' counsel began investigating the claims at issue in the case. *See* Blevins Declaration; Kravec Declaration.

As shown below in the discussion of Class Counsel's lodestar in Section IV.A.3, all told, counsel expended a total of 5,097.8 professional hours on this case as of the end of March 2021. Therefore, in light of the significant time and effort spent by counsel, the first *Johnson* factor supports the requested fee award.

### b.       The novelty and difficulty of the issues

The difficulties Plaintiffs faced in this litigation are evidenced, most telling, by the Court's order denying certification of a litigation class premised, in part, on the possibility of Talisman's recoupment of overpayments.  See Doc. 172.  Moreover, the underlying subject matter itself requires a degree of knowledge and experience that most lawyers do not possess: as one court has recognized, "[o]il and gas exploration and production is a particularly complex business." *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 411 n. 3 (Bankr. S.D. Tex. 2009); *see also* Linda S. Mullenix, *Getting to Shutts*, 46 U. Kan. L. Rev. 727 (1998) (noting the matter of "recovery of oil and gas royalties" is "a subject so arcane that no one understands it, exactly.").  This oil and gas case was no exception.  Over the three-year class period, Plaintiffs allege that Talisman estimated royalty payments to class members in part by discounting gross production volumes to account for shrinkage in the volume of condensate available for sale, and by then allocating the net sales of condensate and flash gas volumes from commingled production volumetrically.  Plaintiffs alleged that the use of volumetric allocation when the "reasonably prudent operator" standard required a compositional allocation based on each well's unique fluid composition resulted in the improper calculation and payment of royalties and a breach of class members' leases.  The Settlement Agreement imposes a compositional allocation method—in this case, the EOS model, to reallocate the volumes of sold condensate and flash gas based upon historical well data and computer simulations.  By reallocating the gross volume of production sold during the Claim Period, the

12

Settlement Agreement and Plan of Allocation account for both the alleged "shrink" and "allocation" errors in calculation and total the maximum damages attributable to each class member resulting from the reallocation. These results were reviewed and approved by Plaintiffs' expert based upon the information available, the regular use of EOS models in the industry, and the specific claims made in the litigation. *See* Doc. 207-2, Decl. of Peter Huddleston at ¶¶ 14-20, 22; Blevins Declaration ¶¶ 63-65.

The second *Johnson* factor therefore supports the requested fee award.

### c.      The skill required to perform the legal service adequately

"The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration." *In re Enron Corp.*, 586 F. Supp. 2d at 789 (quoting *Johnson*, 488 F.2d at 718).

Plaintiffs were represented by attorneys Bryan O. Blevins, Jr. and Michael Hamilton of Provost Umphrey Law Firm, LLP and Joseph N. Kravec, Jr. and Wyatt A. Lison of Feinstein Doyle Payne & Kravec, LLC. Provost Umphrey Law Firm, LLP and Feinstein Doyle Payne & Kravec, LLC are firms with extensive experience prosecuting class actions and complex cases. Class Counsel devoted a significant amount of time – some 5,097.8 professional hours – to this matter to prosecute this case on behalf of the named Plaintiffs and the Settlement Class to a successful conclusion, including (among other things) briefing and arguing Plaintiffs' motion for class certification, the impact of the Fifth Circuit's ruling in *Seeligson v. Devon Energy Prod. Co., L.P.*, 753 F. App'x 225 (5th Cir. 2018), and summary judgment. *See* Blevins Declaration; Kravec

Declaration.   Moreover, they were faced with formidable, experienced opponents from the law firms of Liskow & Lewis and Baker Botts.[7]

The third *Johnson* factor supports the requested award. *See Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *14 (S.D. Tex. June 8, 2018) (approving award sought in settlement of "complex action in a specialized area of law" where "Defendants put forth a vigorous defense" and "Class Counsel are experienced, reputable, and able, and brought their expertise in complex litigation and civil rights to bear in successfully litigating this action."); *Erica P. John Fund*, 2018 WL 1942227, at *11 (finding "the very high quality of defense counsel's work" was relevant to the third *Johnson* factor).

### d.   The preclusion of other employment by the attorneys

As discussed, Class Counsel devoted 5,097.8 professional hours working on this case, which was time they could not have spent working on other matters.   The fourth *Johnson* factor supports the requested fee. *See Erica P. John Fund*, 2018 WL 1942227, at *11 (agreeing that work on case "would inevitably preclude other representations").

### e.   The customary fee for similar work in the community

"'The customary fee for similar work in the community should be considered,' as 'it is open knowledge that various types of legal work command differing scales of compensation.'" *Burford v. Cargill, Inc.*, No. CIV.A. 05-0283, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012) (quoting *Johnson*, 488 F .2d at 718).   In this case, Provost Umphrey represents 230 individual class members.   Each of those plaintiffs executed a representation agreement with contingency fees

---

[7] See https://www.bakerbotts.com/services/industries/energy/oil-and-gas ("Baker Botts is one of the most distinguished oil and gas firms in the world with a seasoned team of oil and gas lawyers who have represented virtually all types of oil and gas project and transactional participants in both U.S. and international markets.").

ranging from 33.3% to 40%, which is typical of these sorts of cases.  *See* Blevins Declaration ¶ 27.  Typical of contingency fee arrangements, the law firm risks its time, expertise, and financial resources solely upon the strength and pursuit of the case without any guarantee of compensation or recoupment of expenses from the client.  Here, Plaintiffs' attorneys' fees, expenses, and incentive awards are being paid through the Settlement, while the Settlement still provides full damages to Participating Settlement Class Members.

Thus, Plaintiff's requested fee is below the customary percentage sought for oil and gas lease litigation of this sort and, as discussed below, class action settlements generally.  The fifth *Johnson* factor weighs in favor of the fee.

### f.     Whether the fee is fixed or contingent

As discussed, above, Class Counsel took this case on a fully contingent basis.  *See* Blevins Declaration ¶¶ 15-16, 27, 90; Kravec Declaration ¶ 13.  This contingent fee arrangement placed substantial financial risk on Class Counsel; if they "were not successful, they risked losing everything."  *See In re Enron*, 586 F. Supp. 2d at 791.  As shown below in Section IV.A.3, Class Counsel devoted 5,097.8 hours of work to this case, equating to $4,227,419 in billable time.  The risk that this time could have been all for naught—a particularly real risk here, when one considers the Court's denial of Plaintiffs' class certification motion, *see* Doc. 172—weighs in favor of the requested fee.  *See Erica P. John Fund*, 2018 WL 1942227, at *11 ("The contingent nature of Class Counsel's fee is also significant considering that at numerous points this case stood on shaky ground, such as when the Court denied class certification"); *Cole*, 2018 WL 2766028, at *14 (approving fee award and noting that "Counsel devoted thousands of hours to this important litigation, with no guarantee of eventual compensation").

### g.   Time limitations imposed by the client or the circumstances

This factor recognizes that "[p]riority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718.   While Plaintiffs were of course required to follow the Court's scheduling and briefing orders, there were no particularly unusual time restraints in this case. Plaintiffs submit that this factor is of neutral applicability.   *Di Giacomo*, 2001 WL 34633373, at *9 ("While the *Johnson* factors must be addressed, rarely are all the *Johnson* factors applicable; this is particularly so in a common fund situation.") (citations omitted); *see also Dyson*, 2016 WL 815355, at *5 ("Courts recognize that not every [*Johnson*] factor need necessarily be considered").[8]

### h.   The amount involved and the results obtained

"The United States Supreme Court and the Fifth Circuit have held that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Enron,* 586 F. Supp. 2d at 796 (*citing Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998)).

Here, the Settlement Agreement provides that all Participating Class Members will receive payments; as a group, they will receive 100% of the amount of actual aggregate underpayments pursuant to the Equation of State ("EOS") Model.   As discussed, the Settlement fully compensates each of them for their royalty underpayments and ensures each will receive at least a minimum payment of $150 per person.   The EOS model, when calculating the net amount to be received by each class member, treated prior overpayments as zero, considering only royalty underpayments

---

[8]The Fifth Circuit has recognized that "[a] district court's *Johnson* analysis, however, need not be meticulously detailed" such that "the trial court's findings [are] so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995).

to be paid to Participating Settlement Class Members.   The Settlement further confers the additional benefit of freedom from Talisman's claims for recoupment or offsetting of future royalty payments based on a re-allocation or re-computation of royalties.  Most importantly, the Settlement achieves this result while avoiding the following possibilities: (i) that no litigation class is ever certified and the proposed Class Members who cannot afford to pursue individual litigation are never compensated for the royalty underpayments; (ii) that even if a class were certified, that the breach of contract claim be resolved in favor of Talisman; (iii) that even if their claim was resolved against Talisman, that some Class Members would be determined to have no damages at all; and (iv) that Class Members, whether part of a certified class or not, nonetheless would be subject to a claim for recoupment by Talisman and could actually be required to pay money to Talisman if the voluntary payment doctrine does not apply.

    In light of these significant litigation risks, the fact that Participating Class Members are provided full recompense for royalty underpayments and the freedom from being required to repay any overpayments to Talisman is an extraordinary result.   The eighth *Johnson* factor clearly supports the requested fee; in fact, Plaintiffs submit that a higher percentage would be justified in light of this result.  *See Erica P. John Fund*, 2018 WL 1942227, at *12 (finding that $100 million settlement was a "reasonable recovery" based on estimated damages of between $233 and $848 million and justifying 33.3% fee); *In re Lease Oil*, 186 F.R.D. at 446 (finding a recovery of 32% of claimed damages to be "a high figure" "[c]ompared to other settlements in commercial litigation").

### i.     The experience, reputation, and ability of the attorneys

    "Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." *Johnson*, 488 F.2d at 718–719.  As discussed above, Provost

Umphrey Law Firm, LLP and Feinstein Doyle Payne & Kravec, LLC are firms with extensive experience prosecuting class actions and complex cases. *See* Blevins Declaration ¶¶ 17-23, 77; Kravec Declaration ¶¶ 14-23. The ninth *Johnson* factor supports the requested fee. *Burford*, 2012 WL 5471985, at *4 (factor supported a substantial fee award where record contained evidence of the experience, reputation, and ability of Class Counsel" who "have performed exceptionally well in this complex litigation").

### j.     The undesirability of the case

"This factor relates closely to the sixth factor—class counsel's fee arrangement." *O'Donnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 6219933, at *27 (S.D. Tex. Nov. 21, 2019). "The risk of non-recovery and undertaking expensive litigation against well-financed corporate defendants on a contingent fee has been held to make a case undesirable, warranting a higher fee." *Erica P. John Fund*, 2018 WL 1942227, at *12 (citations omitted). As discussed above, Class Counsel took this case on a contingency basis and faced significant financial risk while necessarily forgoing other case opportunities. The tenth *Johnson* factor weighs in favor of the fee request.

### k.     The nature and length of the relationship with the client

This factor takes into account the fact that "[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson*, 488 F.2d at 719. Class Counsel had no such relationship with Plaintiffs in this case, and so like the "time restraints" factor, Plaintiffs submit that this factor is neutral.

### l.     Awards in similar cases

"Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007). As demonstrated

above, the requested fee award is below percentages typically awarded in common fund class action cases. "Indeed, numerous decisions have found that a one-third recovery is well within the range of a customary fee." *Jenkins*, 300 F.R.D. at 310 (citing cases). The last *Johnson* factor therefore strongly supports the reasonableness of the fee request.

### 3.     A simplified lodestar cross-check supports the fee request

"The purpose of the lodestar cross-check . . . is to verify the reasonableness of the award calculated under the percentage method, to avoid both over- and under-compensation." *In re Heartland*, 851 F. Supp. 2d at 1086. When used in such a manner, the district courts may review "a summary of the hours expended by counsel at various stages, with less detailed breakdown than a straightforward application of the lodestar method as the primary basis for determining the appropriate fee." *Di Giacomo,* 2001 WL 34633373, at *7; *see also e.g., Erica P. John Fund*, 2018 WL 1942227, at *9 ("[C]ourts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records").

In the first step of the lodestar analysis, the district court must determine whether the hours claimed were reasonably expended on the litigation. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Here, Provost Umphrey attorneys and other co-counsel engaged by that firm expended 3,755.8 hours, *see* Blevins Declaration ¶¶ 24-82, while Feinstein Doyle Payne & Kravec LLC attorneys and paralegals expended a total of 1,342 hours. *See* Kravec Declaration ¶¶ 33-47. Thus, all told, Class Counsel devoted over 5,097.8 hours of professional time litigating this case in seven generally distinct stages of the litigation, including (as detailed in Plaintiffs' Counsels' supporting declarations), among other things, investigation, discovery, research, class certification and summary judgment briefing, oral argument at three class certification hearings, mediation, and drafting and finalizing the Settlement Agreement and

19

seeking Court approval of same.  These hours were reasonable and necessary to the completion of this case.  *See* Blevins Declaration ¶¶ 76-81; Kravec Declaration ¶¶ 45, 47-48.

The second step is to determine a reasonable hourly rate.  "As for a reasonable hourly rate . . . the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits" which is "[g]enerally . . . established through affidavits of other attorneys practicing there."  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  Here, Class Counsel's hourly rates and experience levels are as follows: for Provost Umphrey Law Firm LLP attorneys, $895 for partner Bryan O. Blevins, Jr. (over 30 years of experience) and $895 for partner Michael Hamilton (over 40 years).  *See* Blevins Declaration ¶ 76.  Provost Umphrey also utilized the legal services of attorneys Pat Barrett, an attorney with over 30 years of experience at $895 an hour, and Andrew Bender, an attorney with almost nine years of experience at $350 an hour.  *See* Blevins Declaration ¶ 77.  For Feinstein Doyle Payne & Kravec, LLC attorneys, the hourly rates sought are $895 for partner Joseph N. Kravec, Jr. (28 years); $795 for partner Wyatt A. Lison (19 years); $895 for partner James M. Pietz (over 30 years); $895 for William T. Payne, of counsel and former partner (over 40 years); $595 for associate Brendan R. Delaney (18 years) $495 for associate Ruairi McDonnell (8 years); $495 for former associate McKean Evans (8 years at time of departure); $395 for former associate Kevin Green (4 years at time of departure); $310 for former associate Gregory Murray (4 years at time of departure); and $250 for paralegal Marcia Z. Carney (over 20 years of experience).  *See* Kravec Declaration ¶¶ 33-43.

Attorney Harry G. Potter, III, a Houston based lawyer who has been practicing for over three decades and has 25 years of experience in complex civil litigation cases, is familiar with the customary and reasonable hourly rates for complex litigation and class action work in the Houston,

Texas, market. *See* Declaration of Harry G. Potter, III at ¶¶ 1-4, 13-14 attached hereto as Exhibit C. Based on his experience, a review of relevant case law and fee applications in similar cases, and the historical rates of several firms based in Houston with partner and associate hourly rates near or well above the hourly rates requested here, Mr. Potter agrees that the above listed rates "are reasonable for complex litigation of this type in the Houston market", "within the normal range of hourly fees actually charged by civil trial lawyers in Harris County prosecuting similarly complex cases", and "reflect the competitive market hourly rates for national cases involving complex and class action litigation, as well as the reputation, experience, and success of the lawyers involved." *See id.* at ¶¶ 13-14.

Indeed, Class Counsels' requested rates are in line with what this Court has determined to be reasonable for complex litigation in older cases. *See Adhikari v. Daoud & Partners*, No. 4:09-CV-1237, 2017 WL 5904782, at *14 (S.D. Tex. Nov. 30, 2017) (approving hourly rates of $910, $790, and $745 as "fair and reasonable"); *Cole*, 2018 WL 2766028, at *13 ($650 per hour was a reasonable rate). The same is true of other courts in the Southern District of Texas. *See In re Heartland*, 851 F. Supp. 2d at 1087–88 (approving "rates as high as $825 per hour for one the colead class counsel" as within the "prevailing market rates for lawyers with comparable experience and expertise" in complex class-action litigation); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015) (approving rates of "$635–$775 for partners").

Notably, Talisman's chosen counsel, Baker Botts, charges rates that are comparable; from August 2019 to October 2020, in non-bankruptcy matters, Baker Botts' blended rates were $904 for partners, $782 for counsel, $588 for associates, $356 for staff lawyers, and $289 for paralegals.

*See* First Interim Application at ECF No. 771, ¶ 31 and Exhibit C thereto at ECF No. 771-3, *In re Noble Corporation, PLC,* 20-33826 (Bankr. S.D. Tex. 2009 Dec. 7, 2020).

Class Counsel's total lodestar equals $4,227,419.  *See* Blevins Declaration ¶¶ 78-79; Kravec Declaration ¶¶ 45-46.  The $9 million fee sought thus results in a 2.1 multiplier to the lodestar, which is well within the range of reasonableness and belies any notion that the fee amounts to a windfall recovery.  *See In re Enron*, 586 F. Supp. 2d at 803 (approving 9.52% fee in settlement valued at $7.2 billion, and noting that in its lodestar cross check, "a multiplier of 5.2 is warranted"); *Di Giacomo*, 2001 WL 34633373, at *11 (approving 30% percentage fee as confirmed by lodestar crosscheck that resulted in a 5.3 multiplier and noting "courts typically apply multipliers ranging from one to four"); *see also In re Heartland*, 851 F. Supp. 2d at 1088 (most applications of the lodestar method result in an upward adjustment).

**B.      The Requested Litigation Expense Award is Reasonable**

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."  *Erica P. John Fund*, 2018 WL 1942227, at *14; *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *10 (N.D. Tex. Aug. 4, 2011) (same).  "The reimbursement of costs and expenses seeks not to reward attorneys for their work but restore the status quo."  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 504 (E.D. La. 2020).

Here, Plaintiffs have incurred $871,138.16 in litigation expenses, including, among other things, court fees, fees for legal research, consultant and expert fees, copying costs, and expenses associated with travel, phone calls, and postage.  *See* Blevins Declaration ¶¶ 85-87; Kravec Declaration ¶ 52.  These expenses which were reasonable and necessarily expended in the course of this litigation.  *Id.*

In addition to the litigation expenses incurred directly by Plaintiffs, costs related to the settlement administration, notice of same, and the future distribution of settlement payments to Participating Class Members have been incurred in the amount of $78,120.96 and the Settlement Administrator estimates that the reasonable and necessary costs to complete the administration of the settlement and the distribution of settlement payments to Participating Class Members will cost between $60,000 and $75,000. *See* Blevins Declaration ¶86. These costs are also reasonable and necessary and should be paid from the common fund created by the Settlement Agreement. *See, e.g., Erica P. John Fund*, 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *10 (N.D. Tex. Aug. 4, 2011).

C.    **The Requested Case Contribution Awards are Reasonable**

In determining whether an incentive award is appropriate, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Humphrey*, 802 F. Supp. 2d at 869. *See also In re Heartland*, 851 F. Supp. 2d at 1089.

Plaintiffs Regmund Chesser and Janssen each devoted a significant amount of time and effort to vindicating the rights of over two thousand royalty interest owners over the almost five years this litigation has been pending. Each of them reviewed numerous pleadings, provided evidence in the form of leases and payment records, attended client briefings, provided sworn testimony via declarations, and made themselves available for all hearings and mediation sessions. Moreover, both were forced to endure an unethical solicitation scheme seeking to derail the

litigation, and provided evidence of the same to the Court, including unwanted written and verbal solicitations to terminate Class Counsel. Their efforts resulted in a collective benefit of over $36 million to hundreds of absent class members who will receive the benefit of Plaintiffs' efforts simply by remaining in the Settlement. *See* Blevins Declaration ¶¶ 14, 88-89. The $7,500 incentive awards sought here are fully merited in light of these circumstances and are actually lower than incentive awards that have been approved in other cases. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving incentive awards of $25,000 to each of two named plaintiffs); *In re Lease Oil*, 186 F.R.D. at 449 (approving incentive award of up to $10,000); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving incentive awards of $10,000 to each of the four named plaintiffs).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $9 million, litigation expenses in the amount of $871,138.16, and incentive awards in the amount of $7,500 for each Plaintiff. A proposed order is submitted herewith.

Respectfully Submitted,

By: /s/Bryan O. Blevins, Jr.
Bryan O. Blevins, Jr.
State Bar No. 02487300
Southern District of Texas ID: 347439
**PROVOST★UMPHREY LAW FIRM, L.L.P.**
490 Park Street
Beaumont, Texas 77701
Telephone: (409) 838-8858
Facsimile: (409) 813-8610
Email: bblevins@provostumphrey.com

W. Michael Hamilton (TN 10720)
**PROVOST★UMPHREY LAW FIRM, L.L.P.**
Hobbs Building, Suite 303
4205 Hillsboro Road
Nashville, TN 37215

Telephone: (615) 297-1932
Facsimile: (615) 297-1986
Email:  mhamilton@provostumphrey.com

Joseph N. Kravec, Jr. (PA 68992)
Wyatt A. Lison (PA 90030)
**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
Email:  jkravec@fdpklaw.com
         wlison@fdpklaw.com

***ATTORNEYS FOR PLAINTIFFS AND THE***
***PROPOSED SETTLEMENT CLASS***

## CERTIFICATE OF SERVICE

I certify that the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Incentive Awards was served via the Court's Electronic Filing System to all counsel of record this 12th day of April, 2021.

/s/ Bryan O. Blevins
Bryan O. Blevins