United States District Court
Southern District of Texas
**ENTERED**
May 12, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

RAYANNE REGMUND, et al.      §
                                     §
     *Plaintiffs,*                 §
                                       §
v.                                   §     CIVIL ACTION NO. 4:16-cv-02960
                                       §
TALISMAN ENERGY USA INC.      §
     *Defendant.*               §
                                       §

## ORDER AND JUDGMENT GRANTING
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
## LITIGATION EXPENSES, AND CASE CONTRIBUTION AWARDS

This is a lawsuit in which Plaintiffs Rayanne Regmund Chesser and Gloria Janssen, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), allege that Defendant Talisman Energy USA, Inc., which effective December 30, 2016 by Certificate of Conversion filed with the Secretary of State of Texas became Repsol Oil & Gas USA, LLC, ("Defendant" or "Talisman") improperly calculated and paid royalties in the Eagle Ford Area to the Class Members for Production occurring during the Claim Period of January 1, 2013 and June 1, 2016. On October 15, 2020 Plaintiffs and Defendant executed a Stipulation and Agreement of Settlement filed with the Court and in the exhibits attached thereto (the "Settlement Agreement") finalizing the terms of the Settlement.[1]

On December 9, 2020, the Court preliminarily approved the Settlement and issued an *Order Granting Preliminary Approval of Class Action Settlement, Certifying the Class for Settlement Purposes, Approving Form and Manner of Notice, and Setting Date for Final Fairness Hearing* (the "Preliminary Approval Order") (ECF No. 221). After the Court issued the Preliminary Approval Order, due and adequate notice by means of the Notice of Settlement was

---

[1]      Capitalized terms not otherwise defined in this Order and Judgment shall have the meaning ascribed to them in the Settlement Agreement.

given to the Settlement Class, notifying them of the Settlement and the upcoming Final Fairness Hearing. On May 12, 2021, in accordance with the Preliminary Approval Order and the Notice, the Court conducted a Final Fairness Hearing to, *inter alia*:

       a.      determine whether the Settlement should be approved by the Court as fair, reasonable, and adequate and in the best interests of the Settlement Class;

       b.      determine whether the notice method utilized by the Settlement Administrator: (i) constituted the best practicable notice under the circumstances; (ii) constituted notice reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Litigation, the Settlement, their right to exclude themselves from the Settlement, their right to object to the Settlement or any part thereof, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

       c.      determine whether to approve the Plan of Allocation, which provides for, *inter alia*, the distribution of the Net Settlement Fund to Participating Class Members;

       d.      determine whether a Judgment should be entered pursuant to the Settlement Agreement, *inter alia*, dismissing the claims in the Litigation with prejudice; extinguishing, releasing, and barring all Class Releasing Parties from prosecuting, commencing, or continuing all Class Claims against all Defendant Released Parties in accordance with the Settlement Agreement; and extinguishing, releasing, and barring Defendant from prosecuting, commencing, or continuing all Defendant's Claims against all Participating Class Members in accordance with the Settlement Agreement;

      e.      determine whether the applications for Plaintiffs' Attorneys' Fees, reimbursement for Litigation Expenses, and Case Contribution Awards to Plaintiffs are fair and reasonable and should be approved; and

      f.      rule on such other matters as the Court deems appropriate.

Having reviewed the Settlement, the Settlement Agreement, and all related pleadings and filings, and having heard the evidence and argument presented at the Final Fairness Hearing, the Court now **FINDS, ORDERS, AND ADJUDGES** as follows with respect to Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Case Contribution Awards to Plaintiffs[2]:

1.     **Plaintiffs' Attorneys' Fees.**  Plaintiffs seek attorneys' fees in the amount of $9 million, submitting that the requested fee award is a reasonable percentage of the fund created by the Settlement Agreement.

2.     The Court holds that in this case, it is appropriate and sensible to utilize the "percentage method, in which the court awards fees as a reasonable percentage of the common fund" to analyze Plaintiffs' attorneys' fee request. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642–43 (5th Cir. 2012) (district courts have discretion to choose between the percentage method and lodestar method in common fund cases).

3.     The Settlement Agreement provides a total value of $36,707,008. As an initial matter, the Settlement creates a cash fund of $27 million paid for by Defendant, after a refund of moneys that would otherwise go to Non-Participating Class Members, provides for $24,428,573 in cash from which direct money payments will be made to Participating Class Members, along

---

[2] The Court will issue separate orders pertaining to the allocation and distribution of the Net Settlement Proceeds among Participating Class Members (the "Distribution Order") and final approval of the Settlement Agreement (the "Final Approval Order").

with notice and settlement administration expenses and payment of Plaintiffs' attorneys' fees, litigation expenses, and case contribution awards.[3]  In addition, pursuant to the Settlement Agreement, Defendant will release all Participating Class Members from any claim for recoupment or defensive offset for any overpayment in royalties as a result of a re-allocation or re-computation of royalties.  Doc. 206, S.A. at ¶¶ 1.10, 3.1.  This release constitutes a direct, collective benefit of $12,278,435 to Participating Class Members, and is part of the overall value of the Settlement Agreement.

4.     The Court therefore finds that the $9 million attorney fee award sought represents under 25% of the total value of the Settlement.

5.     The Court finds that 25% is well within, and in fact, at the lower end of, typical percentage fee awards in class action settlements in the Fifth Circuit.  *See, e.g. Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) ("A review of fifth circuit precedent indicates a 30% benchmark fee is reasonable."); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *9 (N.D. Tex. Apr. 25, 2018) ("numerous courts in this Circuit have awarded fees in the 30% to 36% range"); *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *5 (W.D. Tex. Feb. 29, 2016) ("attorney fees awarded under the percentage method are often between 25% and 30% of the fund"); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 448 (S.D. Tex. 1999) ("district courts have awarded fees ranging from 18% to 36% of the recovery").

---

[3] While the Settlement Agreement provided for a "Gross Settlement Fund" of $27 million, the funds that would have otherwise gone to Class Members who opted out of the Settlement or those that Defendant excluded because they previously released or adjudicated the claims released in the Settlement Agreement ("Non-Participating Class Members") revert to Defendant. *See* Settlement Agreement (ECF No. 206 at ¶ 1.37).  The deadline for exclusion has passed, *id.* at ¶ 1.21, and the parties have agreed that $2,571,427 in funds that would have otherwise gone to Non-Participating Class Members will be refunded to Defendant.

6.     The Court has also considered each of the 12 factors enumerated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) as required in this Circuit, *see Dell, Inc.,* 669 F.3d at 644, as set forth below:

Factor 1: "The time and labor required."

Factor 2:  "The novelty and difficulty of the issues."

Factor 3:  "The skill required to perform the legal service adequately."

Factor 4:  "The preclusion of other employment by the attorney because he accepted this case."

Factor 5:  "The customary fee for similar work in the community."

Factor 6:  "Whether the fee is fixed or contingent."

Factor 7:  "Time limitations imposed by the client or the circumstances."

Factor 8:  "The amount involved and the results obtained."

Factor 9:  "The experience, reputation, and ability of the attorneys."

Factor 10:  "The undesirability of the case."

Factor 11: "The nature and length of the professional relationship with the client.

Factor 12:  "Awards in similar cases."

7.     The Court holds that on balance, the *Johnson* factor analysis fully supports the reasonableness of the requested fee percentage; in fact, these factors would support a request for a higher percentage than the one sought by Plaintiffs here.  Class Counsel brought their significant experience to bear in undertaking a complex oil and gas case on a fully contingent basis, expended substantial resources with no guarantee of success, devoted 5,097.8 hours of professional time to the matter for nearly six years, and achieved a result which provides Participating Class Members

with a cash fund from which 100% of their alleged royalty underpayments will be recovered, and the freedom from future claims for recoupment or defensive offsets by Talisman.

8.      In addition, while the Court need undergo only a percentage of the fund analysis along with consideration of the *Johnson* factors, *see Dell,* 669 F.3d at 644, the Court finds that it is sensible to undergo a simplified "cross-check" of the requested attorney fee award with Plaintiffs' counsel's lodestar as an additional level of review. *See Welsh v. Navy Fed. Credit Union,* No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) (using the percentage method analyzed under the *Johnson* factors along with "a simplified lodestar analysis as a crosscheck"). *See also Erica P. John Fund,* 2018 WL 1942227, at *9 ("courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records"); *Di Giacomo v. Plains All Am. Pipeline,* No. CIV.A.H-99-4137, 2001 WL 34633373, at *7 (S.D. Tex. Dec. 19, 2001) ("In using a lodestar approach as a cross-check when awarding a percentage of the fund, a court often uses a summary of the hours expended by counsel at various stages, with less detailed breakdown than a straightforward application of the lodestar method as the primary basis for determining the appropriate fee.").

9.      The Court has considered and reviewed Plaintiffs' counsels' supporting declarations and exhibits and agrees that they have reasonably expended 5097.8 hours of professional time in litigating this matter to date during seven major phases of this case.

10.     In addition, the Court finds that Plaintiffs' counsels' hourly rates are fair and reasonable for complex class action work of this sort in light of counsels' reputation and experience.

11.     The Court therefore concludes that Plaintiffs' counsel's lodestar is $4,227,419. *See Dell, Inc.,* 669 F.3d at 642–43 (when using the lodestar method, the court computes fees by

multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier). As the fee award of $9 million represents a "multiplier" of 2.1 to the lodestar, the Court finds that the lodestar cross-check is further support for the fee request. The multiplier is well within the range of reasonableness and comparable to those in other class action settlements in the Fifth Circuit. *See Di Giacomo*, 2001 WL 34633373, at \*11 (noting "courts typically apply multipliers ranging from one to four" and approving 30% percentage fee as confirmed by lodestar crosscheck that resulted in a 5.3 multiplier); *In re Lease Oil*, 186 F.R.D. at 448 ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied"). *See also In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (approving a multiplier of 5.2).

12.    The Court therefore approves Plaintiffs' motion for attorneys' fees in the amount of $9 million.

13.    **Reimbursement of Litigation Expenses.** The Court has considered and reviewed Plaintiffs' counsels' supporting declarations and exhibits and agrees that they have reasonably spent $871,138.16 in litigation expenses during the seven major phases of this case. The Court finds that reimbursement to Plaintiffs' counsel for these expenses should be paid from the common fund created by the Settlement Agreement. *See, e.g., Erica P. John Fund*, 2018 WL 1942227, at \*14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at \*10 (N.D. Tex. Aug. 4, 2011) (same).

14.    The Court therefore approves Plaintiffs' Motion for reimbursement of litigation expenses in the amount of $871,138.16.

15.   **Reimbursement of Administrative Costs.**   The Court has considered and reviewed the Settlement Administrator's and Plaintiffs' counsels' supporting declarations and exhibits and agrees that the $78,120.96 incurred to date and future administrative costs not to exceed $75,000 are reasonable and necessary for the costs of settlement administration, notice of same, and distribution of settlement payments to Participating Class Members.   The Court finds that these costs should be paid from the common fund created by the Settlement Agreement.   *See, e.g., Erica P. John Fund*, 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *10 (N.D. Tex. Aug. 4, 2011) (same).

16.   The Court therefore approves Plaintiffs' Motion for reimbursement and payment of administrative costs to date in the amount of $78,120.96 and future administrative costs not to exceed $75,000.

17.   **Case Contribution Awards.**   In connection with Plaintiffs' request for case contribution awards (or as they are commonly referred, "incentive awards") the Court has considered the time and effort spent by Plaintiffs throughout this litigation, and the results achieved for the class.   *See Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011) (courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."); *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) ("In deciding whether an incentive award is warranted, courts look to: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has

benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation.").

18.     The Court finds that Plaintiffs Regmund Chesser and Janssen each devoted a significant amount of time and effort to vindicating the rights of hundreds of leaseholders over the four years this litigation has been pending. Each of them reviewed numerous pleadings, provided evidence in the form of leases and payment records, attended client briefings, provided sworn testimony via declarations, and made themselves available for all hearings and mediation sessions. Their efforts resulted in a collective benefit to hundreds of absent class members who will receive the benefit of Plaintiffs' efforts simply by remaining in the Settlement. The $7,500 awards sought here are fully merited in light of these circumstances and consistent with incentive awards that have been approved in other cases. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving incentive awards of $ 25,000 to each of two named plaintiffs); *In re Lease Oil*, 186 F.R.D. at 449 (approving incentive award of up to $10,000); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving incentive awards of $ 10,000 to each of the four named plaintiffs).

19.     The Court hereby approves the Case Contribution Awards of $7,500 for each Plaintiff.

20.     Each Participating Class Member shall receive 100% of the amount of actual underpayments they incurred as determined by the Equation of State ("EOS") Model used as part of this Settlement and Plan of Allocation. In the event that the Gross Settlement Fund, less the Non-Participation Refund, is insufficient to cover the full amount of such payments following the payment of attorneys' fees, litigation expenses, and case contribution awards as approved herein,

and the costs of settlement administration, notice of same, and distribution of settlement payments, Plaintiffs' counsel will be responsible for the difference.

21.     Subject to this Order, the parties are directed to comply with the terms of the Settlement Agreement and the Final Approval Order and Judgment with respect to Plaintiffs' awards of attorneys' fees, litigation expenses, and case contribution awards.

**IT IS SO ORDERED** this _12_ day of _May_ , 2021.

_____
Honorable Judge Keith P. Ellison